IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KELLY WALTRIP                                                    PLAINTIFF

vs.                              NO. 4:07CV00103 BSM

CONWAY HUMAN DEVELOPMENT CENTER,
ET AL.                                                          DEFENDANTS

## ORDER

Plaintiff filed this action alleging that she was terminated in violation of her rights under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601 *et seq.* Defendants have filed a motion for summary judgment. Plaintiff has responded and defendants have replied.   For the reasons set forth below, the motion is granted.

### I.  FACTUAL BACKGROUND

Plaintiff worked as a Habilitation/Rehabilitation Instructor (HR Instructor) at the Conway Human Development Center (CHDC or Center).  The Center is one of six state operated intermediate residential facilities that serves individuals with developmental disabilities.  The Arkansas Department of Human Services (DHS or Department), Division of Developmental Disabilities and the Developmental Disabilities Services Board operate the human development centers.  (Defendants' Undisputed Facts  ¶¶ 1-2).

Because CHDC provides total care services twenty-four hours per day, seven days per week, staff coverage is essential to the Center's operation, and the Center must ensure appropriate staff-to client  ratios to comply with state and federal standards and to meet its clients multiple needs. (Defendants' Undisputed Fact ¶ 3).

The Center serves its clients through a "team" structure.  Clients are assigned to one of five teams based mainly on their functional abilities and health-care needs.  Each team has an administrative supervisor, or "team leader," who is responsible for the administrative oversight of the team.  At the time relevant to plaintiff's claim, plaintiff was assigned to the Sheltered Living Team (SLT), over which defendant Mark Stitch (Stitch) was the team leader.  As an HR Instructor on the SLT, plaintiff was responsible for assisting her clients in performing most daily living and classroom skills.  (Defendants' Undisputed Facts ¶¶ 4-5).

Plaintiff's immediate supervisor, Linda Bettis, counseled plaintiff on a number of occasions for plaintiff's tardiness and failure to report to work as scheduled.  On August 10, 2006, plaintiff called in at 9:23 a.m., after her shift had begun, to say that she had overslept and that she would be late.  Plaintiff arrived at 10:30 a.m.  Because this was plaintiff's third infraction, Bettis consulted with Stitch to determine the appropriate disciplinary action.  Stitch and Bettis agreed that a written warning was appropriate and plaintiff was given a "Notice of Disciplinary Action" for the August 10th infraction, which she signed and dated on August 16, 2006.  (Decl. of Linda Bettis).

On August 21, 2006, plaintiff visited Laura Clark, a nurse practitioner complaining of an "anxiety problem."  (Defendants' Undisputed Fact ¶ 9).  Clark diagnosed plaintiff with an anxiety disorder and insomnia, and gave her samples of an anti-depressant, Lexapro, and samples of a sleep medication.  (Clark depo. p. 17).  Plaintiff was to take the Lexapro for ten days and return to Clark to evaluate the effectiveness of the medication in alleviating`

plaintiff's anxiety. (Clark depo. pp. 18-19).  Clark completed a "medically excused absence" form noting that plaintiff had been under her care from August 21 to August 22, 2006, and stated that plaintiff could return to work on August 23, 2006. (Ex. 18 to Plaintiff's depo.)

Plaintiff did not go back to work but returned to see Clark on August 23, complaining that the Lexapro made her feel "like her hair is crawling" and jittery. Clark decreased plaintiff's Lexapro to 5 milligrams daily.   (Clark depo. p. 22, Ex. 1 to Clark depo.).  Dr. Gary Bowman completed another "medically excused absence " form for plaintiff, noting that plaintiff was under his care from August 22 to August 23, 2006, and was released to work on August 24, 2006.  (Ex. 18 to Plaintiff's depo.).

During the August 23rd visit, Clark also filled out portions of the "Certificate of Health Care Provider" (certificate) form that plaintiff provided to her and which the Center required to approve FMLA leave.  On the certificate, Clark wrote that plaintiff's condition began on approximately August 1, 2006, or the date when plaintiff's grandchild began living with plaintiff.  (Defendants' Undisputed Fact ¶ 14). The form contained the following question:

> The attached sheet describes what is meant by a 'serious health condition' under the Family and Medical Leave Act.  Does the patient's condition qualify under any of the categories described?  If so, please check the applicable category.

There are spaces for various numbered entries, however, Clark checked "None of the above" and wrote "generalized anxiety/stress."

The form also asked the health care provider to describe the medical facts supporting the certificate, "including a brief statement as to how the medical facts meet the criteria of one of these categories."  In response, Clark wrote that plaintiff "is applying for guardianship of abandoned grandchild."  Clark indicated that plaintiff would need care only intermittently or on a part time basis for twelve weeks.  She did not state that plaintiff would need additional treatments or that plaintiff would be unable to perform any of the essential functions of her job.  (Ex. 5 to Plaintiff's depo.).

Plaintiff submitted the FMLA form to her supervisor.  On August 31, 2006, Stitch telephoned plaintiff indicating that he had received the form but that additional information was needed about whether she had a serious health condition.   Stitch then wrote a letter to plaintiff that same day reiterating that more information was needed, and that plaintiff needed to sign the form. The letter stated:

> You recently submitted some FMLA papers that on one part of the form state you needed FMLA "for the birth or placement of a child for adoption or foster care."  Since you are trying for guardianship of your granddaughter, this doesn't meet FMLA criteria.
>
> In the medical section it stated "generalized anxiety/stress."  Additional information is needed to determine if this meets the definition of a serious health condition.  This part also indicated you would need to be off work intermittently.  The Dr[.]  needs to mention how often this is likely to occur. (as we discussed in our phone conversation of 8-31-06 at 11:10 a.m.).
>
> Concerning a serious health condition, your Dr[.] needs to see if you have any illness, injury, impairment or physical or mental condition that involves one of the conditions that is listed on the last page of the form.  More detail on the forms needs to be submitted before it can be approved for FMLA, including how this condition would incapacitate you from work.

-4-

> As soon as your Dr[.] completes your form and you return it, we will proceed
> with determining eligibility.

In a handwritten note on the letter, Stitch wrote "[a] letter from your Dr. along [with] the form would be good.  You also need to sign the back of pg. 4."  (Ex. 6 to Plaintiff's depo.). Plaintiff received the August 31 letter sometime in mid-September (Ex. 7 to Plaintiff's depo.)

On September 15, plaintiff and Stitch attended a mediation regarding the disciplinary action issued by Bettis for plaintiff's August 10 failure to report to work on time.  Stitch still had not received the updated FMLA information and again discussed with plaintiff the need for additional information.   (Defendants' Undisputed Fact ¶ 23).

Plaintiff states that she resubmitted the FMLA forms to the Center.  She claims to have mailed the papers to Paula Holland in the Center's personnel office on September 20, but noted that she did not provide a copy to Stitch.  (Defendants' Undisputed Fact ¶ 34; Ex. 7 to Plaintiff's depo.; Plaintiff's depo. pp. 68, 73).   Defendants claimed they never received further FMLA documentation, and on September 29, Stitch sent plaintiff another letter by certified mail, which she received on September 30.  (Defendants' Undisputed Fact ¶ 24). In the September 29 letter, Stitch noted that he had sent plaintiff her FMLA papers on August 31, 2006, requesting additional information.  He said that on September 15, 2006, he again informed plaintiff of the need to provide additional information.  The letter further stated:

> As of this date I still have not received [the FMLA forms], so you are not on
> FMLA at this time. There is no documentation to support your extended
> absenteeism.  I gave you a break in the beginning in regard to your FMLA

papers since as initially submitted they didn't qualify for FMLA and you and /or your Dr[.] needed to provide more information.  I have been more than lenient in waiting for you to turn these papers in.

In addition you have not talked to your supervisor, any of the other PCs [Program Coordinators] or me about your extended absence.  You did call and talk to a Team Shift Coordinator (TSC) on Mon. 9-25-06 indicating you were going out of state but there was no word on for how long. (which since you have no accumulated leave would be unexcused)

Kelly we haven't heard anything from you since then.  You continue to have a difficult time following [DHS] & Center procedures in regards to letting supervisory staff know what is going on with you.  We have a [Dr.'s] note releasing you back to work on 8-24-06 but haven't seen you at work since 8-17-06.

. . .

I need to discuss this issue with you as your conduct could lead to disciplinary action.  If I don't hear from you by 10 am on 10-5-06 you will be terminated for violating [DHS] Policy 1086 #16 Absence from work without notification for 2 consecutive working days.

(Ex. 8 to Plaintiff's depo.).

On the morning of October 5, 2006, plaintiff contacted Stitch's office and set up an appointment to meet with Stitch on the following day at 9:30 a.m.  At about 9:10 a.m that day, plaintiff poured finger nail polish remover into her eye, thinking that it was alcohol, and had to see her eye doctor, Dr. Charles Todd.  Dr. Todd treated plaintiff between 10:20 and 10:47 a.m. on October 5. (Defendants' Undisputed Facts ¶¶ 27-28).

Plaintiff did not attend the October 6 meeting with Stitch and she did not call to cancel the appointment.  She called Stitch's office after the scheduled meeting time, testifying that she "didn't think about it until after the fact."  Plaintiff did not remember the date on which

she finally called, but only that she "missed her appointment" with Stitch.  (Defendants'
Undisputed Fact ¶ 29, Plaintiff's depo. pp. 76-77).

Plaintiff saw Dr. Todd on October 5, 6, and 9.  Dr. Todd diagnosed plaintiff's eye as
being 100% healed during the October 9 visit. (Defendants' Undisputed Fact ¶ 31).

Plaintiff met with Stitch on October 9, 2006.  During the meeting, Stitch told plaintiff
that he was conducting an administrative review, which is an investigation to determine
whether plaintiff had violated Department policy with regard to absenteeism and related
issues.  Stitch asked plaintiff to write a statement telling her story as to the events that had
taken place over the last month.  Plaintiff asked whether she could write it at home and bring
it to him the following day.  Stitch agreed and told plaintiff to bring the statement to him by
noon the following day.  (Defendants' Undisputed Fact ¶ 32).

On October 10, plaintiff "did not make it" to the meeting with Stitch at the time she
was supposed to meet.  Rather, at about 3:30 p.m. plaintiff delivered to acting team leader
Sara Hunt a handwritten document in which she wrote, among other matters, that she had
returned revised FMLA papers to the Center's personnel department on September 20.
(Defendants' Undisputed Fact ¶ 33).

Hunt told plaintiff that neither Stitch nor personnel had received her updated FMLA
papers.  Hunt advised plaintiff that Stitch wanted her to meet with him at 8:00 a.m. on
October 11 and that she "would be fired if she did not show up."  According to Hunt,
plaintiff asked where she could get more FMLA papers.  (Ex. A to Hunt Decl.).  Plaintiff,

-7-

who claimed to have a copy at her home of the supplemental FMLA form she contended she had submitted, did not provide a copy along with her statement to Hunt, and did not bring the FMLA papers to the meeting with Stitch on October 11**.** ( Defendants' Undisputed Fact ¶ 35).

Plaintiff met with Stitch on October 11, at which point he gave her the opportunity to resign in lieu of being terminated.  If plaintiff was terminated, she would be disqualified for re-employment at DHS for two years. (Defendants' Undisputed Fact ¶ 36).

Stitch conditioned plaintiff's resignation on her agreement (1) to admit that Bettis was not harassing her and could have taken disciplinary action against her for the August 10th infraction; (2) to withdraw her grievance involving the August 10 infraction; and (3) to refrain from filing an action against the Center or its employees for events occurring during her employment.  Stitch wrote these conditions on post-it notes and left plaintiff alone in his office to consider them.   Plaintiff took the notes and left Stitch's office. (Defendants' Undisputed Fact ¶ 37; Plaintiff's depo. p. 88).

In a letter dated October 12, Stitch notified plaintiff that she was terminated for violation of various Department policies.  Stitch noted that from September 11 through October 11, 2006, plaintiff was on leave without pay (LWOP) status. The violations included failure to notify her supervisor at least once a week as to the status of her condition while on sick leave of undetermined duration; unexcused absence or failure to personally notify her supervisor of absence due to illness within one hour of the scheduled starting time;

failure to return to work after expiration of leave; and absence from work without notification for more than two consecutive working days.  Stitch further noted that plaintiff did not appear on October 6 or call to say that she could not make the appointment as scheduled.  (Ex. E to Stitch Decl).  Before finalizing his decision, Stitch submitted it to a two-member Disciplinary Review Committee for review, which approved the termination. (Defendants' Undisputed Fact ¶ 38).

On October 19, plaintiff filed a grievance over her termination.  Although DHS determined that the grievance was not filed in a timely manner, the State Grievance Appeal Panel found it to be timely filed.  DHS set a hearing date for plaintiff's grievance, but plaintiff did not appear at the hearing.  Therefore, the grievance was dismissed.  Plaintiff stated that, on the advise of counsel, she did not appeal her grievance. (Defendants' Undisputed Facts ¶¶ 42 and 43).

Plaintiff filed this action on February 20, 2007.  On January 16, 2008, the court granted in part  defendants' motion for judgment on the pleadings, finding that CHDC has sovereign immunity from plaintiff's damage claim under  29 U.S.C. § 2612(a)(1)(D), the self-care provision.  (Doc. No. 29).

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr.*

*Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558(8th Cir. 2008)).

The moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

"The  nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy."  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citations and internal quotation omitted).

> Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." [Plaintiff as the non-movant]  must demonstrate a genuine issue of material fact, that is a dispute that might "affect the outcome of the suit under the governing law," so that "a reasonable jury could return a verdict for the nonmoving party."

*Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985)).

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inference in the light most favorable to the nonmoving party. *Holland*

-10-

*v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  However, the plain language of Rule 56 mandates the entry of summary judgment against a non-moving party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## III.  ANALYSIS

The FMLA entitles an eligible employee up to twelve work weeks of leave taken during a twelve-month period for certain family or medical reasons specified in the Act. 29 U.S.C. § 2612.  Defendants do not dispute that plaintiff is an eligible employee under the Act.

There are two types of claims under the FMLA: (1) an interference claim where the employee alleges that her employer denied or interfered with her substantive rights under the FMLA, and (2) a retaliation claim where the employee alleges that the employer discriminated against her for exercising her FMLA rights.  29 U.S.C. § 2615(a)(1) and (2);. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).  Plaintiff has brought claims for both interference and retaliation.

A.      Interference Claim

An employer is prohibited from interfering with, restraining, or denying an employee a benefit under the FMLA.   In her interference claim, plaintiff must show only that she was entitled to the benefit denied.  The employer's intentions are irrelevant. *Stallings*, 447 F.3d

at 1050 ("[A]n employee can prove interference with an FMLA right regardless of the employer's intent."). Plaintiff states that she was eligible for FMLA under either the "foster care" provision, 29 U.S.C. § 2612(a)(1)(B), or "serious health condition" provision, 29 U.S.C. § 2612(a)(1)(D).

    1.   Foster Care Provision

Under 29 U.S.C. § 2612(a)(1)(B), an employee is eligible for FMLA leave "[b]ecause of the placement of a son or daughter with the employee for adoption or foster care." A grandchild is not included in the definition of "child" under the Act. 29 C.F.R. § 825.113(c). It does include a child of a person standing "in loco parentis" which is defined as someone who has daily "responsibilities to care for and financially support a child." 29 C.F.R.§ 825.113(c)(3). Assuming that plaintiff stood "in loco parentis," she still is not eligible for FMLA leave under the foster care provision.

Plaintiff's care of her granddaughter cannot be considered "foster care" under the Act, as "state action"is a mandatory prerequisite for the foster care provision. Specifically, 29 C.F.R. § 825.112(e) defines foster care as

> 24-hour care for children in substitution for, and away from, their parents or guardian. Such placement is made by or with the agreement of the State as a result of a voluntary agreement between the parent or guardian that the child be removed from the home, or pursuant to a judicial determination of the necessity for foster care, and involves agreement between the State and foster family that the foster family will take care of the child. Although foster care may be with relatives of the child, *State action is involved in the removal of the child from parental custody*.

(emphasis added).

-12-

There is no dispute but that plaintiff took no action either to adopt her grandchild, petition for guardianship, or terminate the mother's parental rights. The placement of the granddaughter with plaintiff did not involve state action, therefore plaintiff is not entitled to FMLA protection under the foster care provision.

2.   Serious Health Condition

Under the FMLA, an employee can receive up to 12 weeks leave due to a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  A serious health condition is "an illness, injury, impairment or physical or mental condition that involves inpatient care . . ; or continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  The administrative regulation further describes  a "serious health condition requiring continuing treatment" as:

> A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i).  Plaintiff need only demonstrate that she is unable to work in her current job for more than three consecutive calendar days due to the serious health condition

-13-

to show that she is incapacitated. *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 861 (8th Cir. 2000). An employee is "unable to perform the functions of the position' *where the health care provider* finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the regulations at 29 C.F.R § 1630.2(n)." 29 C.F.R. § 825.115(emphasis added).

Plaintiff argues that her generalized anxiety and stress constituted a serious health condition. She visited Clark on two occasions. She was excused from work from August 21 through August 23. Plaintiff has not offered any evidence that she was incapacitated for more than three consecutive calendar days. She was released to work after the third day, without restrictions.

Plaintiff has not presented any evidence to establish that she could not perform the functions of her position. Clark testified that she did not intend for plaintiff to be off any particular number of days. She believed that a person under stress should be able to perform her daily functions and that the medication would help plaintiff handle the stress better. (Clark depo. pp. 32-33).

Plaintiff argues that the prescribed medication had serious side effects. While plaintiff has presented evidence that Lexapro may have adverse side effects, plaintiff has not presented any evidence that she suffered any serious side effects for any prolonged period of time. She initially complained of feeling jittery with the Lexapro. Clark reduced the dosage and plaintiff

-14-

did not complain of any further adverse reactions to the medication.  Plaintiff makes much of the fact that the medication could have impaired her ability to drive yet at the end of August and in September 2006,  plaintiff drove her year-old grandchild to South Carolina and Florida without any adverse effects. (Plaintiff's depo. pp. 42, 44, 46-47).

Plaintiff essentially admits that she requested leave because she had to take care of her granddaughter.  She backdated the request for FMLA leave to August 1, 2006, because that was when her daughter left the state and abandoned her child.  (Plaintiff's depo. pp. 41, 44). Plaintiff concedes that she did not return to work because she had no one to take care of her granddaughter.  (Plaintiff's depo. p. 59).  In fact, during the time plaintiff did not work at the Center, she was applying for jobs with other state agencies.  In her resume accompanying her applications to these agencies, plaintiff stated that her health was "excellent."  (Defendants' Undisputed Fact ¶ 44).

Plaintiff also attempts to show that she was incapacitated for purposes of FMLA protection due to a chronic serious health condition.  A chronic serious health condition is described as one which:

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(iii).

It is clear that plaintiff did not suffer from a chronic condition. There is no evidence in the record that plaintiff's psychiatric or mental disorders existed for any extended period of time.   Her anxiety was situational, as she admits, resulting from the stress associated with having to care for her grandchild.

In addition to her mental disorder, plaintiff contends that her eye condition constituted a serious health condition.   As discussed above, plaintiff went to the eye doctor after she mistakenly put nail polish remover in her eye.   The treatment was short term, within a few days her eye condition was completely healed.   Her eye doctor did not excuse her from work. Furthermore, plaintiff cannot bootstrap her claim for FMLA leave beginning in August with a medical condition that did not arise until October, when she had already been placed in LWOP status.

The court finds that plaintiff has failed to provide sufficient evidence for a jury to conclude that she suffered from a serious health condition which made her unable to perform the functions of her position as an HR instructor.  *See Thorson v. Geminin, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000) (whether employee has serious health condition within meaning of FMLA is mixed question of fact and law.)

> It is for the fact-finder to look at the record and decide if the evidence supports the elements of that test. Once the fact-finder has affirmatively found the necessary facts, the conclusion that a plaintiff had a 'serious health condition' is inescapable as a matter of law.  Therefore, if there are no genuine issues raised as to those facts, which are all material, then summary judgment on the question of 'serious health condition' will likely be appropriate.

*Id*.

-16-

Plaintiff's FMLA self-help claim must fail for yet another reason.  The FMLA provides that an employer may require that request for leave be supported by a certification  issued by the health care provider.  "The employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a); s*ee Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005) ("A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave, and an employer has the right to request supporting information from the employee.")  Sufficient certification includes: "[T]he appropriate medical facts within the knowledge of the health care provider regarding the condition; . . . [and] a statement that the employee is unable to perform the functions of the position of the employee."  29 U.S.C. § 2613(b).

Plaintiff did not provide the Center with sufficient certification, despite several requests by Stitch.  Although plaintiff states that she mailed a certificate on two occasions to the Center, she could neither produce a copy of the certificate she mailed nor could she provide any information regarding what was included in the updated certificate.  Furthermore, plaintiff has presented no evidence that Clark or any other health care provider completed or updated a certificate after August 23, 2006.

Employers are entitled to require "verification of an employee's claimed need for medical leave."  *Woods*, 409 F.3d at 991 (citing 29 U.S.C. §§ 2613, 2514(a)(5)).   Plaintiff failed to comply with her employer's expressed need for additional information, particularly information regarding whether she had a "serious health condition."  *See id.* at  993.  She did

not provide the Center with verification that she was unable to perform the functions of her job. *Id.* at 994. Because of her failure to do so, her time off was not FMLA leave. *See* 29 C.F.R. § 825.311(a) (in case of foreseeable leave, employer may delay taking of FMLA leave to employee who fails to provide timely certification after requested by employer, *i.e,* within 15 calendar days, if practicable).

Plaintiff counters that she could not be terminated because the Center failed to give her notice of her rights under the FMLA. Plaintiff cites 29 C.F.R. § 835.301(b)(1)(ii) which states that an employer requiring medical certification must provide the employee written notice detailing the specific expectations and obligations of the employee and explaining any consequences of failing to do so. In response, defendants argue that the notice requirements of 29 C.F.R. § 825.301(b)(1) can be satisfied by using the Department of Labor's (DOL) prototype notice found at Appendix D to 29 C.F.R. Part 825. *See* 29 C.F.R. 825.301(b)(2). DHS's FMLA forms, which are used by the Center, include a two-sided form number, DHS-1186, which is the Certificate of Health Provider form, and a two-sided form number DHS 1187. Plaintiff agrees that  DHS's FMLA forms  mirror in substance the FMLA forms contained on the Department of Labor's website and authorized by FMLA regulations. (Defendants' Undisputed Fact ¶ 18).

Further, defendants complied with the regulatory requirements that the employer advise an employee whenever the employer finds a certification incomplete and allow the employee a reasonable opportunity to cure the deficiency. 29 C.F.R. § 825.305(d).   Plaintiff was on

notice of the need to provide additional information, through discussions with and letters from Stitch.   Stitch's August 31 letter warned plaintiff that the failure to submit sufficient certification would result in FMLA leave not being approved.   Stitch again reminded plaintiff in the September 29 letter of the need to provide information.   Although plaintiff testified that she had retained a copy of the supplemental certification that she claims to have mailed to the Center, she did not provide a copy to Stitch at his meeting with her in October.   (Plaintiff's depo. pp. 63, 77-78).

Even assuming some notice violation, plaintiff must show that she was prejudiced by the violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).   She cannot do so in this case as she was made aware of the need to provide supplemental information through Stitch's August 31 letter.   Plaintiff has not claimed that she was not aware of the requirement and the consequences if she failed to provide the supplemental information.

In sum, the court finds that plaintiff has failed to demonstrate that she was entitled to FMLA leave and that she was terminated for exercising a right under the FMLA.   She failed to provide the necessary information entitling her to FMLA leave.   Defendants terminated plaintiff when, after having been released to return to work, plaintiff failed to return for more than a month. Defendants had a legitimate reason to terminate plaintiff for essentially abandoning her job. *See Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 973, 977 (8th Cir. 2003) (employer not liable for interfering with employee's FMLA rights if employer would have made same decision had employee not exercised her FMLA rights).

B.  Retaliation Claim

Plaintiff contends that defendants retaliated against her for asserting her rights under the FMLA.   Plaintiff can prove retaliation through circumstantial evidence, using the *McDonnell Douglas* burden-shifting analysis.  *Hite v. Vermeer Mfg. Co.*, 446 F. 3d 858, 865 (8th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 211 U.S. 792, 802-03 (1973)).  To establish a prima facie case of retaliation, plaintiff must show that she exercised rights afforded by the FMLA, that she suffered an adverse employment action, and that there was a causal connection between her  exercise of rights and the adverse action.   If she establishes a prima facie case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for their action.  If they are able to do so, the burden shifts back to plaintiff to demonstrate that defendants' proffered reason is pretextual.  *Id.* (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 837, 832 (8th Cir. 2002)).

Plaintiff claims that defendants retaliated against her for failing to provide a physician's certification.  She contends that similarly situated employees were treated more favorably than she was treated.   Plaintiff further asserts that Stitch's attempt to have her resign under a condition that she would not sue is retaliatory.

Assuming plaintiff can establish a prima facie case, defendants have articulated a legitimate, nondiscriminatory reason for their action.   As discussed above, plaintiff was terminated for failing to return to work after August 24, 2006, when she was released to work. She cannot demonstrate that defendants' reason for termination is pretextual.  According to the

Center's records from January 2005 until March 2007, employees under Stitch's supervision were approved for FMLA leave on forty-four different occasions.  (Ex. 4 to Ethridge Decl.). Employees who were requested to provide additional information did so and Stitch approved their FMLA leave.  (Ex. 6 to Stitch Decl.).

The evidence also reveals that Stitch gave plaintiff several opportunities to provide updated information so that he could approve her FMLA leave.  Nothing in the record indicates that Stitch would have denied FMLA leave to plaintiff had she provided the information supporting her request for leave, as was requested by Stitch.  Plaintiff simply failed, despite repeated warnings, to submit the required information.

Plaintiff points to employees who were not terminated while working under the influence of illegal drugs as evidence of discriminatory treatment.  Those employees are not in any way similarly situated to plaintiff.  *See Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (to be similarly situated, employees must be involved in or accused of same or similar conduct and disciplined in different ways).

That Stitch offered plaintiff the opportunity to resign in lieu of termination is not proof of retaliation or interference, as plaintiff claims.  Pursuant to 29 C.F.R. § 825.220(d), employers cannot induce employees to waive their rights under the FMLA.  However, prior to establishing a violation of § 825.220(d), an employee must show as a prerequisite that she is entitled to FMLA leave.  *See Wood*, 409 F.3d at 994 (as plaintiff had no entitlement to FMLA leave, court need not address whether contract limitations clause was unenforceable

under FMLA).  As discussed above, plaintiff has not established that she was entitled to leave.

Additionally, plaintiff was not deprived of any substantive right under the FMLA. Stitch's offer was just that, an offer which plaintiff did not accept. *See Sutherland v. Goodyear Tire & Rubber Co.*, 446 F. Supp.2d 1203, 1212 (D. Kan. 2006) (finding offer of settlement was not a waiver of rights where plaintiff did not accept offer).  The court finds that defendants "did not deny plaintiff . . . a substantive right or take any adverse action by making this settlement offer." *Id.* at 1213.

In sum, the court finds that plaintiff has not established that defendants retaliated against her for requesting FMLA leave.

### IV.  CONCLUSION

The court finds that plaintiff has failed to establish that defendants terminated her in violation of her rights under the FMLA.  Defendants' motion for summary judgment (Doc. No. 48)  is granted and the complaint is hereby dismissed with prejudice.

IT IS SO ORDERED this 22nd day of September, 2008.

_____
UNITED STATES DISTRICT JUDGE